UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| WAFAA ALWAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. CITIZENSHIP & IMMIGRATION )<br>SERVICES, et al., )<br>)<br>Defendants. ) | No. 4:16-CV-00692 JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion to dismiss filed by Defendants U.S. Citizenship Immigration Services ("USCIS"); Jeh Johnson, Secretary of Homeland Security; Leon Rodriguez, Director of USCIS; Matthew D. Emrich, Associate Director, Fraud Detection and National Security Directorate of USCIS; Daniel Renaud, Associate Director, Field Operations Directorate of USCIS; David Douglas, District Director of the Kansas City District Office, USCIS; and Chester Moyer, Director of the St. Louis Field Office of USCIS (Doc. No. 22). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**Background**

On May 18, 2016, Plaintiffs Eriola Arapi, Samina Syed, Wafaa Alwan, Saqib Sarwar, Mohammad A. Al Muttan, Syed Asghar Ali, Ibrahim Mohamed Zidan, Hanaa B. Kayem, Abubakar Ahmed Abulfathi, Mirzeta Tursunovic, Amina Tursunovic, Syed Tariq Ali,[1] and

---

[1] On June 21, 2016, before amending their complaint, Plaintiffs voluntarily dismissed Syed Tariq Ali (Doc. No. 2).

˘1˘

Mohammad S. Jauda filed the initial complaint in this matter alleging their naturalization applications were being unlawfully delayed under a policy known as the Controlled Application Review and Resolution Program ("CARRP"). Plaintiffs claimed that CARRP was designed by Defendants to delay the immigration cases of Muslims and develop pretextual reasons for denying their applications. Plaintiffs requested the Court enjoin USCIS from applying CARRP to their immigration applications, declare that CARRP is illegal, and adjudicate their applications. (Doc. No. 1). On June 21, 2016, Plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief ("AC"), joining eight additional Plaintiffs, for a total of twenty Plaintiffs (Doc. No. 3).

On July 12, 2016, this Court granted Defendants' unopposed motion seeking an extension of their initial response date from July 22, 2016 to September 5, 2016 (Doc. No. 10). On August 29, 2016, after Plaintiffs filed a "Rule 41(a) Notice of Voluntary Dismissal of Claims by Certain Plaintiffs" (Doc. No. 12), the Court dismissed the following ten Plaintiffs: Eriola Arapi, Saqib Sarwar, Syed Asghar Ali, Hanaa B. Kayem, Mohammad S. Jauda, Musrath Jahan Baig, Mahmood Ali Mansur, Sary Ibrahim Doumbia, Nermin Busevac, and Abdelsamed Alamin.[2] (Doc. No. 13).

On September 1, 2016, this Court granted Defendants' unopposed motion seeking another extension of their response date, from September 5, 2016 to October 20, 2016 (Doc. No. 14). On October 5, 2016, after Plaintiffs filed a "Second Rule 41(a) Notice of Voluntary Dismissal of Claims by Certain Plaintiffs" (Doc. No. 16), this Court dismissed the following four

---

[2] As indicated in Plaintiffs' "Notice," USCIS approved each of these ten former Plaintiffs' naturalization applications (Doc. No. 12).

Plaintiffs: Samina Syed, Abdolreza Osouli, Amina Tursunovic, and Sharafat Mohammed.[3] (Doc. No. 17).

On October 13, 2016, the Court granted Defendants' unopposed motion to extend their response date from October 20, 2016 to December 19, 2016 (Doc. No. 19). On December 12, 2016, after Plaintiffs filed a "Third Rule 41(a) Notice of Voluntary Dismissal of Claims by Certain Plaintiffs" (Doc. No. 20), the Court dismissed the following five Plaintiffs: Ibrahim Mohamed Zidan, Abubakar Ahmed Abulfathi, Mirzeta Tursunovic, Mohammad A. Al Muttan, and Adnan Sawlan.[4] (Doc. No. 21).

Wafaa Alwan, a forty-nine year old Iraqi national and lawful permanent resident of the United States, is the sole remaining Plaintiff in this matter. Alwan applied for naturalization on December 17, 2014, and appeared for an interview on August 31, 2015 (AC at ¶ 20). She alleges that even though she satisfies all statutory criteria for naturalization, USCIS refused to adjudicate her application, instead applying more stringent rules under CARRP (AC at ¶ 3). According to Alwan, her application was delayed under CARRP, which prohibits USCIS field officers from approving an application with a potential "national security concern," instead directing them to deny the application or delay adjudication—often indefinitely—in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 101 *et seq*. (AC at ¶¶ 8-9, 13, 48). Alwan requests the Court determine that she meets the requirements of naturalization and naturalize her without further delay (AC at ¶¶ 137-38).

On August 25, 2016, after the filing of this complaint, the Illinois State Police arrested

---

[3] As indicated in Plaintiffs' second "Notice," USCIS approved each of these four former Plaintiffs' naturalization applications (Doc. No. 16).

[4] As indicated in Plaintiffs' third "Notice," USCIS approved three and denied three naturalization applications for these six former Plaintiffs (Doc. No. 20).

Alwan for the offense of Unlawful Transportation of Contraband Cigarettes, in violation of 35 ILCS 130/9C, a Class 4 Felony. USCIS denied Alwan's application for naturalization on October 20, 2016 based on unlawful acts committed during the good moral character period (Doc. No. 22-1). On November 17, 2016, Alwan filed an administrative appeal of the denial of her application (Doc. No. 22-2), which appears to be pending.

**Legal framework for naturalization**

To become a United States citizen through naturalization, an applicant must satisfy certain eligibility criteria under the INA. Applicants must prove that they are "at least 18 years of age," 8 C.F.R. § 316.2(a)(1); have "resided continuously, after being lawfully admitted" to the United States "for at least five years"; and have been "physically present" in the United States for "at least half of that time." 8 U.S.C. § 1427(a)(1). Applicants must also demonstrate "good moral character" for the five years preceding the date of application, "attach[ment] to the principles of the Constitution of the United States, and favorabl[e] dispos[ition] toward the good order and happiness of the United States …" 8 C.F.R. § 316.2(a)(7).

Once an individual submits an application, USCIS conducts a background investigation, see 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1, which includes a full FBI criminal background check, see 8 C.F.R. § 335.2. After completing the background investigation, USCIS schedules a naturalization examination at which the applicant meets with a USCIS examiner for an interview. In order to avoid inordinate processing delays and backlogs, Congress has stated "that the processing of an immigration benefit application," which includes naturalization, "should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). USCIS must either grant or deny a naturalization application within 120 days of the date of the examination. 8 C.F.R. § 335.3. If an applicant satisfies the statutory requirements for

naturalization, USCIS "shall grant the application." 8 C.F.R. § 335.3(a).

If USCIS fails to adjudicate a naturalization application within 120 days after interviewing a naturalization applicant, the applicant may apply to the district court for a hearing on the naturalization application, in which case the court "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). If USCIS denies a naturalization application, the applicant may administratively appeal the denial by requesting a hearing before an immigration officer by submitting a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings (Under Section 336 of the INA). 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b). If, after administratively appealing the denial, USCIS sustains a naturalization denial, an applicant may seek de novo review of naturalization eligibility with the district court. See 8 U.S.C. §§ 1447(a), 1421(c).

Alwan alleges that in April 2008, USCIS created CARRP, an agency-wide policy for identifying, processing, and adjudicating immigration applications that raise "national security concerns." (AC at ¶ 63). She claims that a "national security concern" arises when an individual or organization has been determined to have an "articulable link … to prior, current, or planned involvement in, or association with, an activity, individual or organization" that "has engaged in terrorist activity" or who is a member of a "terrorist organization" under the INA. (AC at ¶ 69).

If a USCIS officer identifies an application posing a "national security concern," the application is removed from the agency's routine adjudication track and thereafter subjected to CARRP's rules and procedures that guide officers to deny or delay adjudication of those applications. (AC at ¶ 68, 92). One such procedure, "deconfliction," requires USCIS to coordinate with the law enforcement agency, often the Federal Bureau of Investigations, that possesses information giving rise to the supposed national security concern. (AC at ¶¶ 93-95).

Alwan alleges USCIS often makes decisions to deny immigration applications because the FBI requests or recommends the denial, not because the person was statutorily ineligible for the benefit. (AC at ¶ 96). This allows law enforcement and intelligence agencies to directly affect the adjudication of a requested immigration benefit. (AC at ¶ 95).

In addition to "deconfliction," once officers identify an applicant as a "national security concern," CARRP directs officers to perform an "eligibility assessment" to determine whether the applicant is eligible for the benefit sought. (AC at ¶ 97). According to Alwan, CARRP instructs officers to look for any possible reason to deny an application so that "valuable time and resources are not unnecessarily expended" on further investigation. (AC at ¶ 98). This results in officers inventing false or pretextual reasons to deny the applications. (Id.) If an officer cannot find a reason to deny the application, Alwan claims that CARRP instructs officers to "internally vet" the "national security concern" using information available through the Department of Homeland Security's systems and databases, open source information, review of the applicant's file, and interviews or site visits. (AC at ¶ 99). After conducting the eligibility assessment and internal vetting, USCIS officers are again instructed to conduct "deconfliction" to determine the position of any interested law enforcement agency. (AC at ¶ 100). If the "national security concern" remains and the officer cannot find a basis to deny the benefit, Alwan claims the application proceeds to "external vetting," during which time USCIS officers and law enforcement agents confirm the existence of the "national security concern." (AC at ¶¶ 101-02). CARRP authorizes officers to hold applications in abeyance for periods of 180 days to enable law enforcement agents and USCIS officers to investigate the "national security concern." (AC at ¶ 103). The Field Office Director may extend the abeyance periods so long as the investigation remains open, and Alwan alleges that CARRP provides no outer limit on how long USCIS may

hold a case in abeyance, despite the statutory requirement under INA that USCIS adjudicate a naturalization application within 120 days of examination. (AC at ¶¶ 103-04).

In essence, Alwan's complaint takes issue with USCIS's delay in adjudication of applications when it cannot find a reason to deny the application by subjecting that application to CARRP. (AC at ¶ 108). Alwan also claims that when an applicant files a mandamus action with the district court to compel USCIS to adjudicate a pending application, that filing often has the effect of forcing USCIS to deny the statutorily-eligible application because CARRP prevents agency field officers from granting an application involving a "national security concern." (Id.). Alwan claims CARRP effectively creates two substantive regimes for immigration application and processing: one for those applications subject to CARRP and one for all other applications. (AC at ¶ 109). She claims CARRP results in extraordinary processing and adjudication delays, often lasting many years, and baseless denials of statutorily-eligible immigration applications. (AC at ¶ 111).

**Discussion**

Defendants argue that Alwan's complaint should be dismissed for lack of subject matter jurisdiction because USCIS has adjudicated her naturalization application, rendering the relief she seeks moot. Alternatively, Defendants argue that to the extent Alwan's complaint is construed as a challenge to her naturalization denial, it should be dismissed for lack of ripeness because she has filed an administrative appeal of her denial, which remains pending with USCIS. See 8 C.F.R. § 316.10(b)(3)(iii); see also 8 U.S.C. §§ 1101(f), 1427(a)(3). Alwan does not address Defendants' arguments for dismissal on mootness and ripeness grounds. Instead, she asserts that once a naturalization applicant files a complaint with a district court alleging unreasonable adjudication delay, as she has done here, the plain language of 8 U.S.C. § 1447

confers exclusive jurisdiction on the district court to decide the matter. Alwan argues that USCIS was precluded from taking any action on her pending naturalization application and that the purported denial by USCIS is null and should be disregarded by this Court. Defendants note and the Court agrees that Alwan's argument is belied by the fact that her counsel did not challenge USCIS's jurisdiction to adjudicate the naturalization applications of the nineteen former Plaintiffs while the amended complaint was pending before this Court (Doc. No. 26 at 3-4).

Furthermore, this Court recently rejected an identical argument in <u>Haroun v. United States Department of Homeland Security</u>, No. 4:16CV01511 JAR, 2017 WL 3168530 (E.D. Mo. July 26, 2017), ruling that § 1447(b) grants concurrent jurisdiction over a naturalization application to the district court once a plaintiff files a complaint. <u>Id</u>. at *5-6 ("[T]he Court finds that USCIS properly exercised its jurisdiction over Haroun's application when it issued its denial while Haroun's lawsuit was pending before the Court."). Since this lawsuit was filed, USCIS completed its review of Alwan's application and denied it, rendering the relief she seeks in the amended complaint moot. Mootness is a jurisdictional bar. <u>Id</u>. at *6 (citing <u>Arkansas AFL-CIO v. F.C.C.</u>, 11 F.3d 1430, 14235 (8th Cir. 1993)). Moreover, Alwan has administratively appealed her denial, and until the USCIS resolves her appeal, this matter is not ripe for review.

Alwan does not address the remaining claims in the complaint challenging CARRP on constitutional and statutory grounds. Defendants argue these claims must also be dismissed for lack of subject matter jurisdiction because Alwan lacks standing to bring them (Doc. No. 22 at 5 n.8). The Court addressed the standing issue in <u>Haroun</u>, and concluded that the plaintiff had no present interest, "other than vindication," in a declaratory judgment on his claims arising from USCIS's application of CARRP as to him, and thus failed to allege an injury sufficient to confer standing. 2017 WL 3168530, at *7. Likewise, Alwan has not alleged a substantial likelihood of

future injury. She argues that her interest in United States citizenship has been adversely affected by the application of CARRP to her naturalization application. (AC at ¶¶ 116, 121, 125, 130, 135). In actuality, each of her constitutional and statutory claims is grounded in the alleged procedural deficiencies in USCIS's review of her application—a review that has concluded. As Defendants point out, while Alwan may submit another naturalization application, the application at issue here has been adjudicated and is now under administrative appeal. Thus, there is no likelihood that this application will ever come before USCIS again for adjudication. Given Alwan's lack of standing, the CARRP claims will also be dismissed for lack of subject matter jurisdiction.

For these reasons, the amended complaint will be dismissed without prejudice for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint [22] is **GRANTED.**

A separate judgment of dismissal will accompany this Memorandum and Order.

Dated this 24th day of August, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**